EASTFIELD S. S. CO., Limited, v. McKEON et al.

(Circuit Court of Appeals, Fifth Circuit. December 31, 1912. Rehearing Denied January 28, 1913.)

No. 2,313.

CORPORATIONS (§ 586*)—PARTIES—UNEXECUTED AGREEMENT FOR TRANSFER OF CAUSE OF ACTION.

Libelant, an English steamship company, joined with four other companies in an agreement for consolidation, providing that the vessels and other property of the several companies, including the benefit of all contracts existing on a date named, should be transferred by proper conveyances to be thereafter executed to a new company. Conveyances of the vessels of the constituent companies were subsequently made, but with respect to choses in action and similar assets the parties agreed that the same should be realized on and the proceeds paid over to the new company. One of such choses in action within the terms of the agreement was a claim by libelant against respondent for breach of a charter. Held, that the agreement itself, not having been executed as to such claim by a transfer or assignment, did not divest libelant of its title or interest so as to deprive it of the right to maintain a suit thereon in its own name.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2348–2353; Dec. Dig. § 586.*]

Appeal from the District Court of the United States for the South-ern District of Alabama; Harry T. Toulmin, Judge.

Suit in admiralty by the Eastfield Steamship Company, Limited, against J. T. McKeon and others. Decree for respondents (186 Fed. 357), and libelant appeals. Reversed.

This is an appeal from a decree in admiralty entered in the court below dismissing a libel, and the transcript shows as follows: A libel was filed by the Eastfield Steamship Company as owner of the steamship Eastfield against certain charterers to recover damages resulting from the latter's re-fusal to continue to use the vessel under the charter.

The cause was put at issue, duly tried, and Judge Toulmin filed the fol-lowing opinion in his conclusion upon the facts and merits of the case:

This is an action brought by libelant to recover hire alleged to be due from the defendants on a charter of the steamship Eastfield, made between the Port Arthur Transatlantic Steamship Company and the libelant. The charter party was signed by the agents of the libelant and by H. G. G. Donald, manager of the Port Arthur Transatlantic Steamship Company, on June 19, 1901. While the charter party was in the possession of said Don-ald, on July 2, 1901, the defendants indorsed in writing on said charter party a guaranty to the owners of the steamship Eastfield of the fulfillment of the charter party, and the same was delivered to the agents of said own-ers, who were at that time the Eastfield Steamship Company, and who are the libelants in this case.

"By the provisions of the charter party the charterers agreed to hire said steamship Eastfield for the term of 24 calendar months from the time of her delivery, at the hire of £900 per month. In accordance with the con-tract, said steamship was delivered to the charterers on September 10, 1901, at Mobile, Ala. On the date of the said guaranty by the defendants, said Donald, as manager, transferred to each of them one-third interest in the profits to be made by the ship under the charter, and subsequently on the same day transferred the entire interest to them. The evidence was that the defendants 'financed' the enterprise, and paid such installments of the hire of said steamship as were paid. The evidence showed that said Don-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes
201 F.—30

ald and one or more of the defendants jointly inspected the vessel, accepted her, and jointly gave instructions to her while she was operating under the charter.

"Defendant McKeon testified that said guaranty was made for the benefit of said Donald and of the owners of said steamship. The last voyage under said charter was from Mobile to Newcastle, with a cargo of lumber to be there discharged, and to await orders from the charterers. The vessel arrived at Newcastle on April 9, 1902. Her cargo was completely discharged on April 12, 1902. Up to this time no orders, instructions, or information of any kind had been received by the master of the vessel from the charterers as to her further use or service, and no intimation had been received by her owners of the charterers' intention to throw up the vessel. On April 9, 1902, libelants received a letter from the charterers, and on April 20, 1902, a cablegram from Louis Donald, a ship broker at Mobile, who had some connection with the chartering of the vessel, notifying the libelants that the charterers declined to use her further. The libelants replied that ·the vessel was still at charterers' disposal, and insisted on the charter being fulfilled. Subsequent communications between the parties failed to effect an adjustment of the matter. The charterers still declining to further employ the vessel, the libelants sought employment elsewhere for her, and some time in the next month succeeded in placing her.

"The main ground indeed, I believe the only ground, alleged by the charterers for throwing up the vessel and declining to further use her was their dissatisfaction with her speed and coal consumption. There was some conflicting evidence as to the general speed of the vessel, and also as to her speed during the voyages made under the charter, as well as to the quality and efficiency of the coal used. The charterers under their contract furnished the coal. However, on the facts established by the evidence, I think it is unnecessary and but a waste of time to undertake to reconcile such evidence, or to consider it at all. There was no guaranty or representation as to the speed of the vessel or her coal consumption in the charter party, and the express evidence was that there was no such guaranty given by· the owners of the vessel or by their agents. There was no evidence of any fraudulent or false representations as to such speed and coal consumption made by the owners or by their authority to induce the making of the con-. tract. There was evidence that at the time the charterers declined to further use the vessel there was little demand for such vessels, and that freights had declined.

"My opinion is that the refusal of the charterers to comply with the provisions of the charter party and to pay the hire of the vessel according to the terms of the contract was without legal justification or excuse; and that on the facts shown by the evidence in the case the defendants are. liable for the same.

"But it is contended on the part of the defendants that at the time this suit was brought the libelants had parted with all interest in the steamship Eastfield and in all their assets, including the subject-matter of this suit.

"It is true that the libelants had parted with all interest in said steamship, as claimed. The transfer of said interest was under a sale which took effect on the 30th day of June, 1902. By an agreement made by one W. W. Jones, liquidator for and on behalf of the libelants with the Field Line (Cardiff), Limited, on the 9th day of December, 1902, it was agreed that the former would sell and the latter would purchase said steamship Eastfield, and the benefit of all contracts, agreements, and engagements ex-. isting or pending on the 30th day of June, 1902, entered into or held by said steamship company. The contract involved in this suit and the cause of action arising out of same is not expressly named in said agreement or specially identified in it. But it appears from the testimony of said W. W. Jones that the parties to said agreement of the 9th of December, 1902, understood it to include the benefits· of the cause of action in this case, as well as all other assets of said Eastfield Steamship Company, and that it was further understood and agreed that any proceeds of such assets that said Jones as liquidator might recover and realize should be transferred to said Field Line, Limited.

"The purchase provided for in the agreement of December 9, 1902, was completed on April 7, 1903. Said agreement provided that said sale should, on the completion of the purchase, be deemed to take effect as from the 30th day of June, 1902. From that date (June 30, 1902) the Field Line, Limited, became the owner of the steamship Eastfield, and entitled to the benefits of all contracts entered into by her and existing on that day.

"Said Jones testified that the cause of action in this suit was agreed on December 9, 1902, to be sold, and was absolutely intended to be sold on April 7, 1903, but that it came under the method of realization by him hereinbefore mentioned, and that it was never transferred.

"If the benefits under this claim were sold to the Field Line, Limited, on April 7, 1903, then under the agreement of December 9, 1902, such sale took effect on the 30th of June, 1902, and said Field Line, Limited, became the beneficial owner thereof from that date, and no agreement between the parties as to the method of realization on the same by said liquidator would, in my opinion, vest in the Eastfield Steamship Company the right to recover by suit any interest or claim belonging to said Field Line, Limited, and, certainly none accruing after the 30th day of June, 1902. Mackay v. Randolph, Macon Coal Co., 178 Fed. 881 [102 C. C. A. 115].

"The evidence is that the hire of the steamship Eastfield was paid by the defendants up to April 10, 1902. From that date to June 30, 1902, the vessel belonged to the libelants, and my opinion is that they are entitled to maintain this suit to recover the charter hire of said steamship from April 10, 1902, to the 30th of June, 1902, inclusive, less any profits made by the libelants by her employment during that period with interest on the same from June 30, 1902.

"It is ordered that it be referred to Richard Jones, clerk of this court, as special commissioner, to ascertain and report to the court the amount found due on the basis stated in the opinion of the court, and from the evidence now before the court and any relative to the matter that may be submitted by the parties.

"Filed August 4, 1910."

. This opinion was followed by a formal decree in favor of the libelant and referring the case to a special commissioner to report upon the damages.

This was followed by an application on the part of respondents for a rehearing on the ground that "the transfer by the libelant, the Eastfield Steamship Company to the Field Line (Cardiff), Limited, covered and carried, not only the steamship and benefits of all contracts existing on the 30th day of June, 1902, but all assets and effects and thereby carried all interest which the Eastfield Steamship Company had in the contract of charter of this vessel which is the subject-matter of the suit," and therefore the Eastfield Steamship Company was without interest to maintain and prosecute the suit.

This application for rehearing was granted and an order rendered thereon setting aside the order of reference, and thereupon the libelant asked leave of the court to amend its libel so that it might read that "the Eastfield Steamship Company sues on its own behalf and for use of the Field Line (Cardiff), Limited."

. This application for leave to amend was denied by the court in an elaborate opinion to the effect that libels in admiralty should be, and could only be, brought and maintained by the real party in interest, and, following this opinion, the court enters a formal decree dismissing the libel, whereupon the Eastfield Steamship Company brought this appeal.

Charles R. Hickox and Convers & Kirlin, all of New York City, and D. P. Bestor, Jr., of Mobile, Ala., for appellant.

. Palmer Pillans, of Mobile, Ala., for appellees.

Before PARDEE and SHELBY, Circuit Judges, and MEEK, District Judge.

PARDEE, Circuit Judge (after stating the facts as above).   On the general merits of this case we concur with the District Court in the conclusion that on the pleadings and proofs the respondents are liable to the Eastfield Steamship Company, Limited, or its assignees for full damages resulting from breach of the charter party.

On the more or less technical question as to whether subsequent to the breach of the charter party and prior to the institution of this libel the Eastfield Steamship Company, Limited, had so sold and transferred its rights in the claim for resulting damages to the Field Line (Cardiff) Limited, that it had no longer any interest in the same, and therefore that the libel filed and prosecuted in its name must be dismissed, we do not concur in the opinion and decree of the District Court.   The proof in the case shows that the cause of action for breach of the charter against the respondents was originally in the Eastfield Steamship Company, Limited, in whose name the libel was filed and the suit prosecuted.   Subsequent, however, to the breach and prior to the filing of the libel, there was a contract entered into between the Eastfield Steamship Company and four other steamship companies for the formation in England of the corporation of the Field Line (Cardiff) Limited, and the amalgamation of five single ship companies which had all been theretofore managed by Mr. William W. Jones, who was appointed liquidator of each of the companies for the purpose of transferring each of the steamers to the new corporation, and Mr. Jones was in due course appointed chairman and managing director of that company, so that he then was managing director, not only of the old companies, but of the new one.   The agreement under which the transfer was to be made was dated December 9, 1902, and was between the five different single ship companies as vendors and the Field Line (Cardiff) Limited, as vendee.

The substance of the agreement, material to the present consideration, was for the transfer to the vendee of:   (1) Sixty-four sixty-fourths shares of the five ships of the vendor companies;  (2) the benefit of all contracts, agreements, and engagements existing or pending on the 30th day of June last (1902) entered into or held by the vendor companies, respectively, for the purpose of the working of, or otherwise in connection with the said steamships, respectively, including all contracts of marine insurance; and (3) all other, if any, the undertaking property, assets, and effects of every kind, including credit balances of the vendor companies as on that date.

As it was recognized that various matters would have to be done to complete the transfer and to vest in the vendee all that the vendors intended to convey, it was provided in clause 20 as follows:

"The vendor companies, respectively, and their liquidator shall as soon as conveniently may be (but without prejudice to clause 17 hereof) execute and do at the expense of the purchasing company all such assurances and things as shall be reasonably required by the purchasing company for vesting in it the property hereby agreed to be transferred and for giving to it the full benefit of their agreement."

Clause 17 need not be considered as it dealt with a lien by the vendor companies on their property until the purchase money should be

paid. The only testimony in the case as to what took place after the agreement was made is that of Mr. Jones as follows:

"Between the 9th December, 1902, and 7th April, 1903, the said conditions preliminary to sale and amalgamation were completed. The sale contingently agreed upon as aforesaid was determined and agreed as between the vendor companies and the purchasing company to be carried out, and in the following manner: As to the steamship Eastfield and the other steamships before mentioned by transfers which were duly executed on the 7th April, 1903. As to the other assets so agreed to be sold, by my realization and recovery as liquidator of the vendor companies and the transfer of the proceeds to the purchasing company, I being chairman and managing director of the purchasing company and liquidator of the vendor companies, this method of carrying out the sale of such last-mentioned assets was considered effective and sufficient, and a good performance of clause 20 of the agreement above cited for the due assurance of assets purchased. This method was therefore followed and the liquidation of the several vendor companies was kept open and active for the purpose of so carrying out the sale. The cause of action sued upon, namely, breach of the charter dated July 19, 1901, arose in April, 1902, and a claim for damages had arisen at the date of the said agreement of December 9, 1902. This right of action was therefore one of the said assets agreed contingently to be sold by that agreement, and afterwards in April, 1903, absolutely intended to be sold, and which came under the method of realization so determined upon as aforesaid between the vendor companies and the purchasing company, and consequently was never transferred or otherwise divested from the 'Eastfield' Steamship Company, Limited, but upon repudiation of liability by respondents the 'Eastfield' Steamship Company, Limited, exercised the right of action which they had advisedly and by agreement aforesaid retained, I having sole authority by the companies' acts (for England) to use the name of the 'Eastfield' Steamship Company, Limited, in any proceedings for the enforcement of such right of action."

From the testimony of Mr. Jones, and from the language of clause 20 of the agreement, it appears that all parties considered that certain of the interests which were intended to be conveyed to the vendee did not vest in the vendee by the payment of the purchase price, but were to be specifically thereafter transferred; and the method by which the assets other than physical property were to be transferred to the vendee was agreed between the liquidator of the vendor companies and the vendee to be by the realization and recovery of such assets by the liquidator and the transfer of the proceeds to the purchasing company. And it seems that the liquidation of the various vendor companies was kept open for the very purpose of permitting the liquidator to realize on intangible assets and choses in action.

The claim of the Eastfield Steamship Company against the respondents for damages for the breach of the charter party was such a chose in action that the title thereto would not pass by any general contract so as to be available to the vendee without a specific transfer or assignment in writing; so that, while under the contract or agreement of December 9, 1902, it was to be thereafter transferred as provided in clause 20 of the contract, the evidence shows that in April, 1903, when other assignments of assets were made, no specific transfer of this claim was made, but that by and with consent of all parties in interest it was arranged that the liquidator was to realize and recover on the same and thereafter transfer the proceeds to the purchasing company. As noticed above, the only evidence on the subject

is that of Jones, the liquidator of all the consolidating companies, and is to the effect that this right of action was one of the said assets agreed contingently to be sold, and afterwards, in April, 1903, absolutely intended to be sold, but which under the method of realization determined upon between the vendor companies and the purchasing company was never transferred or otherwise divested from the Eastfield Steamship Company.

As to the exact title retained in the Eastfield Steamship Company under the agreements made and the writings actually passed, the construction given by the parties thereto, as shown by their acts and conduct in carrying out the same, is generally very significant, if not controlling, and it is clear that the parties had a perfect right by subsequent agreement to vary the executive terms of their original contracts to suit themselves; and all this goes to support the evidence of Jones and his construction of the agreement and arrangement of the parties as to the transfer of the specific asset in question. From all of which we conclude that as the cause of action was originally and without doubt vested in the Eastfield Steamship Company, and as the only evidence of any divestiture is that of Jones, which goes no farther than to show an unexecuted agreement to transfer to the Field Line (Cardiff), Limited, the libel in this case was well brought and the same properly prosecuted in the name of the Eastfield Steamship Company, Limited, and that the objection that said company is not such a real party in interest that the libel may not be prosecuted in its name should be overruled, particularly as the case shows beyond doubt that the Field Line (Cardiff), Limited, the alleged transferee of the claim in suit is privy to the proceedings, and as such will be fully bound by any decree that may be rendered on the merits.

We do not think it necessary to review and attempt to harmonize the many authorities cited by the learned proctors in their elaborate briefs, nor those cited and relied upon by the District Judge with whose main proposition, that suits in admiralty should be prosecuted in the name of a real party in interest, we agree, for we decide this case upon the peculiar undisputed facts shown by the evidence.

We may further notice that to maintain the exception interposed would be to give too much effect to a mere technicality not prejudicially affecting the exceptors so far as the merits of the case are concerned, and, if allowed, only operating a hindrance and delay in the judicial proceedings necessary to establish the rights of the parties.

For these reasons, the decree dismissing the libel is reversed, and the case is remanded, with instructions to re-enter and re-establish the decree rendered, filed, and entered in the District Court on August 4, 1910, and thereafter to proceed according to admiralty rules and usages in ascertaining and decreeing the damages to which the libelant is entitled.